IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL DESANTO,

                Plaintiff,

    v.

IKEA NORTH AMERICAN SERVICES,
LLC d/b/a IKEA,

                Defendant.

CIVIL ACTION
NO. 21-1533

## <u>OPINION</u>

**Slomsky, J.**                                      **August 12, 2021**

## I.    INTRODUCTION

On August 11, 2020,[1] Plaintiff Michael DeSanto returned from paternity leave to his position as a Recruitment Delivery Manager at Defendant IKEA North American Services, LLC ("IKEA" or "Defendant").  (See Doc. No. 1 ¶¶ 11, 17, 40.)  Before his return, Plaintiff was interviewed on July 31, 2020 by outside counsel retained by IKEA regarding an investigation of him by IKEA.  (See id. ¶¶ 33-34.)  During the investigation, Plaintiff told the interviewing attorneys that he had voiced discrimination concerns about his colleague Richard Carsley ("Carsley") to his former supervisor Eleanor Tattar ("Tattar").  (See id. ¶¶ 35-37.)  Plaintiff also informed the interviewing attorneys that Carsley was "discriminatory based upon age and gender in the workplace (and also with respect to hiring and candidates)."  (Id. ¶ 36.)

On August 17, 2020, Plaintiff was informed by Phillip Wellington ("Wellington"), an IKEA employee who had the title "Head of People" or "Chief Human Resources Officer," that his

---

[1]    Although exact dates are given in this Opinion, they are preceded in the Complaint by the phrase "on or about."

employment had been terminated.  (See id. ¶ 41.)  While Defendant initially maintained that a reason for the termination was not required because Plaintiff was an "at-will employee," Defendant later gave three reasons for the termination: (1) disrespectful behavior toward colleagues within a few days of his return from Family and Medical Leave Act ("FMLA") paternity leave; (2) disfavored management style; and (3) creating an "unsustainable working dynamic." (Id. ¶¶ 41-42.) As a result, on March 31, 2021 Plaintiff filed a Complaint in this case alleging that Defendant terminated him in violation of Title VII of the Civil Rights Act of 1964 (Count I), the Age Discrimination in Employment Act ("ADEA") (Count II), and the FMLA (Count III).  (See id. ¶¶ 48-60.)

On June 1, 2021, Defendant filed a Partial Motion to Dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  (Doc. No. 4.)  In the Motion, Defendant seeks dismissal of Counts I and II for failure to state a claim because Plaintiff "only offers conclusory statements that fail to provide the requisite factual content for such a claim to survive a motion to dismiss."  (Doc. No. 4-1 at 1.)  Defendant argues that Plaintiff did not provide fair notice of the Title VII and ADEA claims because the facts in the Complaint were not "facially plausible" in that Plaintiff has merely stated "unadorned, the defendant-unlawfully-harmed-me accusation[s.]"  (Id.)  On June 7, 2021, Plaintiff filed a Response in Opposition to the Motion in which he contends that Defendant's Partial Motion to Dismiss should not be granted because he has stated a "facially plausible claim for relief."  (Doc. No. 8 at 1.)

For reasons described below, Defendant's Partial Motion to Dismiss Counts I and II (Doc. No. 4) will be denied.

## II.    BACKGROUND

On October 1, 2017, Plaintiff was hired by Defendant IKEA as a "Recruitment Delivery Manager."  (Doc No. 1 ¶ 11.)  Plaintiff worked in the Human Resources Department and "supervis[ed] a group of direct reports in the 'Talent Department' in all aspects of recruitment/hiring/retention."  (Id. ¶ 14.)  In this role, Plaintiff reported directly to Eleanor Tattar ("Tattar"), Vice President of Succession Planning/Talent Manager.  (See id. ¶ 15.)  "Tattar directly reported to Phillip Wellington[,]" also known within IKEA as "Head of People" or "Chief Human Resources Officer" for the United States.  (Id. ¶ 16.)

Plaintiff was employed by Defendant for about three (3) years and worked out of its United States headquarters in Conshohocken, Pennsylvania.  (See id. ¶¶ 12-13.)  On May 11, 2020, Plaintiff took FMLA-qualifying leave for the birth of his child.  (See id. ¶¶ 17-18.)  Prior to taking leave, Plaintiff had never been "counseled or disciplined" by anyone employed by Defendant.  (Id. ¶ 20.)  And less than a week before Plaintiff began his leave, Tattar conducted Plaintiff's mid-year evaluation.  (See id. ¶ 21.)  In the written evaluation, Tattar noted that Plaintiff's work was "generally exceeding expectations with significant positive praise."  (Id. ¶ 22) (emphasis omitted).

As noted, on May 11, 2020, Plaintiff took FMLA-qualifying paternity leave.  (See id. ¶¶ 17-18.)  On June 2, 2020, Tattar "was placed on involuntary leave pending an investigation." (Id. ¶ 24.)  Despite Plaintiff being the "type of employee who at least tried to stay in general touch with colleagues and management, even if during FMLA leave," Plaintiff was not aware at that time of either the pending investigation of Tattar or of her involuntary leave.  (Id. ¶¶ 24-26.)  The Complaint is silent as to exactly when Plaintiff learned that Tattar was placed on involuntary leave or under investigation.

On July 15, 2020, Plaintiff reached out to his colleague Katie Wagner ("Wagner") to ask about Tattar's status.  (See id. ¶ 27.)  Wagner told Plaintiff she was unable to disclose this

information, but recommended that Plaintiff contact Tanesha Carter, the Vice President of Human Resources ("HR") Operations and Continuous Improvement.  (See id.)  Carter was Tattar's interim replacement.  (See id.)  Because Plaintiff intended to take twelve weeks of leave, his anticipated return date was approximately August 3, 2020.  (See id. ¶ 19.)  As the return date approached, Plaintiff wanted clarification and understanding regarding Tattar's status.  (See id. ¶¶ 19, 28.)  He sought out and scheduled a telephone call with Carter on July 16, 2020.  (See id. ¶ 28.)

Plaintiff was surprised to find Wellington, Tattar's supervisor, participating in the call.  (See id. ¶ 29.)  During the call, Plaintiff was informed that "Tattar was no longer employed by Defendant . . . and . . . Carter was going to be [his] interim manager upon his return from FMLA leave" in August.  (Id.)  In a second call on July 16, 2020, Plaintiff was notified by Phillip Wellington and another IKEA employee, Emily Wellington, that a complaint had been lodged against him and an investigation would be forthcoming.  (See id. ¶ 30.)  On this call, Plaintiff was informed that a third party would be contacting him.  (See id. ¶ 32.)

On July 24, 2020, Phillip Wellington informed Plaintiff that he needed to complete a confidentiality agreement and that he would be interviewed by attorneys from an outside law firm retained by Defendant.  (See id. ¶ 33.)  Plaintiff alleges that the investigation delayed Plaintiff's return to work for over a week.  (See id. ¶ 39.)  During this time, Plaintiff was not informed of concerns about him.  (See id.)

On July 31, 2020, Defendant's outside counsel interviewed Plaintiff.  (See id. ¶ 34.)  During this interview, the attorneys questioned him on his relationship with colleagues, his communication with Tattar, his qualifications, general work matters, and his discrimination concerns.  (See id.)  Specifically, Plaintiff stated that his colleague Richard Carlsey ("Carsley") was "discriminatory based upon age and gender in the workplace (and also with respect to hiring and candidates)."  (Id.

¶¶ 35-36.)  Although Plaintiff had previously discussed his discrimination concerns with Tattar, he reiterated his concerns with multiple examples being given to the attorneys during the July 31 interview.  (See id. ¶ 37.)

On August 10, 2020, Phillip Wellington and Carter informed Plaintiff over a phone call that he could resume work the following day.  (See id. ¶ 38.)  He did so on August 11, 2020.  (See id. ¶ 40.)  On August 17, 2020, Phillip Wellington reached out to Plaintiff and informed him that he was being terminated.  (See id. ¶ 41.)  Plaintiff alleges that the only intervening actions resulting in his termination were the FMLA leave and discrimination concerns he expressed to outside counsel.  (See id. ¶ 23.)  When Plaintiff pressed for a reason for termination, Phillip Wellington told him that Defendant is "an at will employer and [Defendant] do[es] not need to give [Plaintiff] a reason why[.]"  (Id. ¶ 41.)

After the termination, he received a "corrective action" notice stating that he was terminated for, among other things: (1) disrespectful behavior towards colleagues within a few days of return from FMLA leave; (2) disfavored management style; and (3) creating an "unsustainable working dynamic."  (Id. ¶ 42.)  Because these reasons were inconsistent with his record of no discipline and his strong relations with colleagues, management, and positive reviews he received pre-FMLA leave, (see id. ¶¶ 43-44), Plaintiff felt he was discriminatorily and retaliatorily terminated based upon the following:

> (a) his use of FMLA leave; (b) his complaints of (age and gender) discrimination in the workplace by Carsley; (c) Phillip Wellington being specifically upset with discrimination concerns having been expressed about Carsley, whom he was upon information and belief close with; and (d) fabricating false reasons for terminations of HR personnel who were potential and actual witnesses for Tattar.

(Id. ¶ 46.)  Furthermore, Plaintiff alleges that Defendant has a history of retaliation against employees who formally complained about discrimination by Carsley.  (See id. ¶ 47.)

On March 31, 2021, Plaintiff initiated this case by filing a Complaint against Defendant IKEA.  (Doc. No. 1.)  As noted earlier, Plaintiff alleges three claims against Defendant: (1) retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count I); (2) retaliation in violation of the Age Discrimination in Employment Act ("ADEA") (Count II); and (3) interference and retaliation in violation of the Family and Medical Leave Act ("FMLA") (Count III).  (See id. ¶¶ 48-60.)

> Regarding Plaintiff's retaliation claim in Count I, Plaintiff makes the following allegation:

> Plaintiff had a colleague on his team, one Richard Carsley (a/k/a "Rick"); Carsley was, in Plaintiff's opinion, discriminatory based upon age and gender in the workplace (and also with respect to hiring and candidates).

> Plaintiff had previously escalated his discrimination concerns to Tattar, and he reiterated such concerns with numerous examples to [outside c]ounsel on July 31, 2020.

(Id. ¶¶ 36-37.)  His Count II claim similarly relies on the allegations that "Carsley was . . . discriminatory based upon age and gender in the workplace."  (Id.)

On June 1, 2021, Defendant IKEA filed the instant Partial Motion to Dismiss Counts I and II of the Complaint.  (Doc. No. 4.)  Defendant contends that Plaintiff "has inadequately pled claims for retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA") because he only offers conclusory statements that fail to provide the requisite factual content for such a claim to survive a motion to dismiss."  (Doc. No. 4-1 at 1.)  Specifically, Defendant claims that "there are no sufficient factual averments supporting Plaintiff's allegations that he engaged in protective activity by complaining of either gender or age discrimination."  (Id. at 4.)  Defendant also avers that Plaintiff does not allege any "particular period of time" when the escalation of the discrimination concerns happened, and he fails to set forth a causal link between his alleged protected activity and his subsequent termination.

(Id. at 5.)  As such, Defendant submits that its Motion should be granted because "Plaintiff has failed to allege sufficient factual content to nudge his claim of retaliation under Title VII or the ADEA 'across the line from conceivable to plausible[.]'"  (Id. at 6) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009)).

On June 7, 2021, Plaintiff filed a Response in Opposition to Defendant's Motion.  (Doc. No. 8.)  Plaintiff asserts that the Complaint contains sufficient facts which "taken as a whole state a facially plausible claim for relief" and that Plaintiff "is not required to establish a prima facie case at the pleading stage[.]"  (Id. at 1) (emphasis omitted).  Plaintiff asserts that sufficient facts have been pled because he was engaged in protected activity under what is known as the "opposition clause," which is that "the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII."  (Id. at 11) (quotations omitted) (quoting Webb v. Merck & Co., Inc., 450 F. Supp. 2d 582, 600 (E.D. Pa. 2006)).  In addition, Plaintiff argues that even if the Complaint is insufficient, he should be granted leave to amend it because "such an amendment would [not] be inequitable or futile."  (Id. at 14.)

On June 14, 2021, Defendant filed a Reply, again alleging that Plaintiff "fails to provide a scintilla of factual support to permit his ADEA and Title VII allegations to survive."  (Doc. No. 9 at 1.)  First, Defendant argues that "Plaintiff does not allege what conduct he perceived to be discriminatory or when it occurred[.]"  (Id.)  Second, Defendant claims that Plaintiff "has not alleged any facts suggesting that [D]efendant's decision to terminate him was causally connected to his alleged opposition of [D]efendant's unlawful employment practices."  (Id. at 2-3) (quotations omitted) (quoting Long v. Spalding Auto. Inc., 337 F. Supp. 3d 485, 493-94 (E.D. Pa. 2018)).

On July 1, 2021, the Court held a hearing on Defendant's Partial Motion to Dismiss Plaintiff's Complaint.  (See Doc. No. 11.)

### III.  STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Iqbal, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010) set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (second alteration in original) (citation omitted).  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

## IV.   ANALYSIS

Defendant IKEA argues that Counts I and II of Plaintiff's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim because "there are no sufficient factual averments supporting Plaintiff's allegations that he engaged in protective activity by complaining of either gender or age discrimination."  (Doc. No. 4-1 at 4.)  Defendant also contends that Plaintiff's allegations regarding him "'previously escalat[ing] his discrimination concerns' to his former manager Ms. Tattar," are insufficient because Plaintiff "does not provide any particular period of time for when this escalation allegedly occurred or allege there was a causal link between this reporting and his termination."  (Id. at 5.)  In his Response in Opposition, Plaintiff maintains that his "formal[] reporting [of] what he reasonably believed to be illegal ageist and sexist hiring practices by [Carsley] is the precise type of protected conduct Title VII and the ADEA are aimed to protect from retaliation."  (Doc. No. 8 at 12.)[2]

---

[2]   Plaintiff also argues that pleading a prima facie case is not necessary at this stage.  (See Doc. No. 8 at 8.)  Indeed, a plaintiff alleging retaliation under Title VII and the ADEA need not establish a prima facie case of retaliation to survive a motion to dismiss because "[a] prima facie case is an evidentiary standard, not a pleading requirement, and hence is not a proper measure of whether a complaint fails to state a claim."  Pedro v. City Fitness, LLC, 803 F. App'x 647, 651 (3d Cir. 2020) (alteration in original) (quotations omitted) (quoting Connelly

Upon review of the facts alleged in the Complaint, the Court finds that Plaintiff has pled sufficient facts to state a plausible claim for relief in Counts I and II of the Complaint.  Counts I and II are discussed seriatim.

### A.    Count I: Title VII Retaliation

In Count I of the Complaint, Plaintiff alleges that Defendant retaliated against him in violation of Title VII of the Civil Rights Act of 1964.  (See Doc. No. 1 ¶¶ 48-51.)  Under Title VII, to establish a prima facie case of retaliation a plaintiff must demonstrate:

> (1) that [they] engaged in a protected activity, which can include informal protests of discriminatory employment practices such as making complaints to management; (2) 'adverse action by the employer either after or contemporaneous with the employee's protected activity' and (3) a causal connection between the protected activity and the adverse action.

Moore v. Sec'y U.S. Dep't. of Homeland Sec., 718 F. App'x 164, 166 (3d Cir. 2017) (quoting Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015)).  "The Third Circuit has held that formal and informal complaints of discrimination, . . . constitute protected activities."  Smith v. RB Distrib., Inc., No. 20-900, 2020 WL 6321579, at *10 (E.D. Pa. Oct. 28, 2020) (citing Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 288 (3d Cir. 2001)).  The "complaint[] must be specific enough to notify management of the particular type of discrimination at issue in order to constitute 'protected activity.'"  Sanchez v. SunGard Availability Servs. LP, 362 F. App'x 283, 288 (3d Cir. 2010) (citing Barber v. CSX Distrib. Servs., 68 F.3d 694, 702 (3d Cir. 1995)); see also LeBlanc v. Hill Sch., No. 14-1674, 2015 WL 144135, at *14 (E.D. Pa. Jan. 12, 2015) (holding that

---

v. Lane Constr. Corp., 809 F.3d 780, 789 (3d Cir. 2016)).  Moreover, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The appropriate question at this pleading stage is "whether the plaintiff's pleading has alleged enough facts to raise a reasonable expectation that discovery will reveal evidence of each element."  Pedro, 803 F. App'x at 651 (internal quotations and citation omitted).

the plaintiff's "letter constitute[d] protected activity because it specifically claimed discrimination based on [p]laintiff's sex and age.").  Moreover, "the employee must have a reasonable, good faith, belief that the complained of conduct violates Title VII."  Ellingsworth v. Hartford Fire Co., 247 F. Supp. 3d 546, 555 (E.D. Pa. 2017) (quoting Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006)).

A plaintiff may demonstrate a causal connection through "timing," i.e., temporal proximity between the protected activity and the adverse action, "continuing antagonism," or "other evidence gleaned from the record as a whole from which causation can be inferred."  Goodman v. Norristown Area Sch. Dist., No. 20-1682, 2020 WL 5292051, at *5 (E.D. Pa. Sept. 4, 2020) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000)).  "[W]here the temporal proximity between the protected activity and the adverse action is unusually suggestive, it is sufficient standing alone to create an inference of causality . . . ."  LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007) (quotations omitted) (quoting Barthold v. Briarleaf Nursing & Convalescent Ctr. Nursing Home, No. 13-2463, 2014 WL 2921534, at *6 (E.D. Pa. June 27, 2014)).  "[T]he passage of mere hours or days has been deemed unusually suggestive," but "the passage of weeks, months, and years" is not unusually suggestive.  Barthold, 2014 WL 2921534, at *6 (quotations omitted) (quoting Shenk v. Pennsylvania, No. 11-1238, 2013 WL 1969311, at *8 (M.D. Pa. May 13, 2013)).

Here, Plaintiff contends that he engaged in protected activity when he informed outside counsel and his prior supervisor, Tattar, about his concerns regarding Carsley's gender discrimination.  (See Doc. No. 1 ¶¶ 49, 53.)  Specifically, the Complaint alleges as follows:

> 36. Plaintiff had a colleague on his team, one Richard Carsley (a/k/a "Rick"); Carsley was, in Plaintiff's opinion, discriminatory based upon age and gender in the workplace (and also with respect to hiring and candidates).

37. Plaintiff had previously escalated his discrimination concerns to Tattar, and he reiterated such concerns with numerous examples to [outside c]ounsel on July 31, 2020.

(Id. ¶¶ 36-37.)  On August 17, 2020, three days after returning to work from paternity leave and roughly two weeks after voicing his concerns to outside counsel at the July 31 interview:

Plaintiff was contacted by Phillip Wellington . . . (with Emily Wellington present); in this call, Plaintiff was informed (1) Phillip Wellington made the decision to terminate him; and (2) "We are an at-will employer and do not need to give you a reason why," when Plaintiff pressed for any plausible explanation or rationale for his abrupt termination.

(Id. ¶ 41.)  Moreover, after his termination:

Plaintiff receive[d] a "corrective action" identifying that he was terminated for inter alia: (1) being disrespectful at some point within a few days of his return from FMLA with colleagues: (2) various unspecified colleagues didn't like his management style; and (3) his unspecified actions created an "unsustainable working dynamic."

(Id. ¶ 42.)

Based on these allegations in the Complaint, Plaintiff engaged in protected activity when he made "complaints of . . . gender discrimination in the workplace by Carsley" during the July 31 meeting with outside counsel and previously raised concerns of gender discrimination with his supervisor, Tattar.  (Id. ¶¶ 37, 46.)  These allegations put Defendant on notice "of the particular type of discrimination at issue[,]" Sanchez, 362 F. App'x at 288; therefore, they sufficiently allege protected activity.

Furthermore, "constru[ing] the [C]omplaint in the light most favorable" to Plaintiff, his allegations also are sufficient to reasonably infer a causal connection between Plaintiff's protected activity and the adverse employment action—his termination.  Ellingsworth, 247 F. Supp. 3d at 549 n.1.  The Complaint alleges that seventeen days elapsed between Plaintiff's protected activity during his July 31, 2020 interview with outside counsel, and his termination on August 17, 2020.

(See Doc. No. 1 ¶¶ 35, 41.)  Based on the timing of his informal complaint, return to work, and subsequent termination, the Court can reasonably infer that this timing is unusually suggestive such that it raises an inference of causal connection based on temporal proximity.  See, e.g., Burgess-Walls v. Brown, No. 11-275, 2011 WL 3702458, at *8 (E.D. Pa. Aug. 22, 2011) (gap of twelve to forty-two days between the plaintiff's protected activity and her demotion was sufficient to establish a causal connection); LeBlanc, 2015 WL 144135, at *19 ("Thirteen days between protected activity and an adverse employment action may be unusually suggestive . . . ."); E.E.O.C. v. Turkey Hill Dairy, Inc., No. 06-04332, 2007 WL 2407095, at *6 (E.D. Pa. Aug. 8, 2007) (finding that the plaintiff's termination one month following protected activity raised a sufficient inference of causal connection under Title VII retaliation).

Accordingly, because Plaintiff "has raised a reasonable inference that discovery will reveal evidence of the elements necessary to establish" his Title VII retaliation claim, Connelly v. Lane Const. Corp., 809 F.3d 780, 793 (3d Cir. 2016), Defendant's Partial Motion to Dismiss (Doc. No. 4) will be denied as to Count I of the Complaint.

### B.       Count II: ADEA Retaliation

In Count II of the Complaint, Plaintiff argues that Defendant retaliated against Plaintiff in violation of the ADEA.  (See Doc. No. 1 ¶¶ 52-55.)  A retaliation claim under the ADEA has the same elements as a retaliation claim under Title VII.  See Geary v. Visitation of Blessed Mary, 7 F.3d 324, 331 (3d. Cir. 1993) ("The ADEA's substantive provisions were derived in haec verba from Title VII.").  To establish a prima facie case of ADEA retaliation, a "plaintiff must show that (1) plaintiff engaged in an ADEA-protected activity; (2) defendant took an adverse employment action against plaintiff after plaintiff's protected activity; and (3) a causal relationship exists between plaintiff's protected activity and defendant's adverse employment action." Zielinski v. White Hall Manor, Inc., 899 F. Supp. 2d 344, 353 (E.D. Pa. 2012).  As such, the applicable law

under Title VII set forth in Section IV.A., <u>supra</u>, also applies to the ADEA retaliation claim raised in Count II.

A plaintiff "engage[s] in protected conduct when s/he opposes discrimination on the basis of age[,]" <u>Mwimbwa v. CSL Plasma, Inc.</u>, No. 19-4626, 2021 WL 2550954, at *5 (E.D. Pa. June 21, 2021) (quoting <u>Barber v. CSD Distrib. Servs.</u>, 68 F.3d 694, 701 (3d Cir. 1995)), and the "plaintiff must have a good faith, reasonable belief that an ADEA-violation occurred." <u>Zielinski</u>, 899 F. Supp. 2d at 354. Simply put, a plaintiff's complaints to an employer must specifically mention age discrimination to constitute protected activity under the ADEA. <u>See</u> <u>Klastow v. Newtown Friends Sch.</u>, 15 F. App'x 130, 133 (3d Cir. 2013); <u>see</u> <u>also</u> <u>Morrison v. Access Servs., Inc.</u>, No. 14-4685, 2014 WL 5286604, at *3 (E.D. Pa. Oct. 15, 2014) ("Complaining of age discrimination satisfies the first element of a prima facie case of retaliation, i.e., engaging in protected activity.").

"To state a claim for retaliation, plaintiff must also show that a causal relationship exists between [his] ADEA-protected behavior and defendant's adverse action against [him]." <u>Zielinski</u>, 899 F. Supp. 2d at 355. Again, allegations "are sufficient for a trier of fact to plausibly infer a causal link" where the timing between an informal complaint of age discrimination and "termination soon thereafter" is unusually suggestive. <u>Id.</u>; <u>see also</u> <u>Fasold v. Just.</u>, 409 F.3d 178, 190 (3d Cir. 2005) (citing <u>Kachmar v. SunGard Data Sys., Inc.</u>, 109 F.3d 173, 178 (3d Cir. 1997)) (explaining that where "a short period of time separates an aggrieved employee's protected conduct and an adverse employment decision, such temporal proximity may provide an evidentiary basis from which an inference of retaliation can be drawn.").

Here, Plaintiff's allegations also sufficiently state a claim for ADEA retaliation. As previously noted, Plaintiff alleges as follows:

36. Plaintiff had a colleague on his team, one Richard Carsley (a/k/a "Rick"); Carsley was, in Plaintiff's opinion, discriminatory based upon age and gender in the workplace (and also with respect to hiring and candidates).

37. Plaintiff had previously escalated his discrimination concerns to Tattar, and he reiterated such concerns with numerous examples to [outside c]ounsel on July 31, 2020.

(Doc. No. 1 ¶¶ 36-37.)  And roughly two weeks after he voiced his discrimination concerns at the July 31, 2020 interview:

Plaintiff was contacted by Phillip Wellington . . . (with Emily Wellington present); in this call, Plaintiff was informed (1) Phillip Wellington made the decision to terminate him; and (2) "We are an at-will employer and do not need to give you a reason why," when Plaintiff pressed for any plausible explanation or rationale for his abrupt termination.

(Id. ¶ 41.)

These allegations show that Plaintiff engaged in protected activity under the ADEA because he "specifically mentioned age discrimination."  Zielinski, 899 F. Supp. 2d at 354. Moreover, when the facts are viewed in the light most favorable to the Plaintiff and all inferences are drawn in his favor, the seventeen-day gap between Plaintiff's protected activity and his termination establishes the temporal proximity to infer a causal connection.

Accordingly, Defendant's Partial Motion to Dismiss (Doc. No. 4) also will be denied as to Count II of Plaintiff's Complaint.

**V.    CONCLUSION**

For the foregoing reasons, Defendant's Partial Motion to Dismiss Plaintiff's Complaint (Doc. No. 4) will be denied.  An appropriate Order follows.